[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION CONCERNING PETITIONER'S MOTION TO MODIFY DISPOSITION
The Department of Children and Families (hereinafter DCF) CT Page 13688 filed a motion on August 11, 1998 to modify disposition in the above-entitled matter, which concerns the interests of two minor children, Angel M. (d.o.b. August 25, 1990) and Angelica M. (d.o.b. November 7, 1997). The respondent parents, Alejandra C. and Angel M., object to the motion, which requests that the court modify its prior order of protective supervision, and commit the custody of each child to DCF. In support of its motion, the petitioner has alleged that the respondent mother has failed to abide by several court-approved expectations set at the time of disposition, and that because of this, it is now in the best interests of both children that their care and custody be assumed by DCF.
A contested hearing on the motion was heard by the court on September 29, 1998 and on November 10, 1998. All parties (and the minor children) were represented throughout the proceeding by their respective counsel. DCF introduced 13 full exhibits into evidence, as well as the testimony of the following witnesses:
 1. Kanani Bell, social worker, Burns Elementary School; 2. Carrie Cassidy, social worker, DCF; 3. Gladys Capo, social worker, Hartford Public School System.
Counsel for the mother and father, and the children's attorney, participated fully in the contested hearing but did not introduce testimony or evidentiary exhibits.
 FACTUAL FINDINGS
The court has carefully reviewed the evidence and testimony adduced at this hearing. Based on its review, the court finds that the following facts were proven by a preponderance of the evidence:
DCF filed neglect petitions and received ex parte orders of temporary concerning Angel and Angelica on December 5, 1997. The neglect proceeding was were based upon allegations that Alejandra C. had failed to meet her children's medical needs, had a significant history of substance abuse, and was unwilling to accept support services. (Petitioner's Exhibit B, Page 1).
Angel and Angelica were placed in state foster care. During the five months immediately following the children's placement, the mother's situation improved markedly. Alejandra C. cooperated with a parenting program, underwent a psychological evaluation CT Page 13689 and began to deal with her substance abuse problem. (Petitioner's Exhibit B, Page 1). Angel was returned to his mother's care on April 4, 1998. The mother supplied two negative urine samples on May 5, 1998 and May 12, 1998.
At a neglect hearing at the Superior Court for Juvenile Matters in Hartford on May 12, 1998, the court (Keller, J.) adjudicated both Angel and Angelica as neglected children. On that date, the court placed both children on protective supervision for a period of 12 months. Angelica was returned to his mother's care on that date. At the court hearing, Judge Keller approved written expectations in conjunction with the order of protective supervision. Theses expectations were agreed to and signed by both parents. (Petitioner's Exhibit A). The expectations required the mother to: keep all appointments set by or with DCF; keep her whereabouts known to DCF and her attorney; participate in parenting and drug/alcohol counseling; continue with her methadone maintenance treatment; secure and maintain adequate housing and income; refrain from substance abuse; have no involvement with the criminal justice system; cooperate with a substance abuse education course to be arranged by DCF; cooperate with a parent aid program; and refrain from taking sleeping pills (benzodiazepines or any other prescription sleeping aid which were not prescribed for her by a physician). (Petitioner's Exhibit A).
The last expectation was set because the mother had tested positive for benzodiazepines prior to disposition. The mother had claimed that she had taken the pills — which had been given to her by a friend — in order to sleep. (Petitioner's Exhibit B, Page 1).
The court-approved expectations for the father were similar in nature to those requested of the mother. They included requirements that Angel M. keep all appointments set by or with DCF; participate in drug/alcohol counseling; cooperate with a substance abuse evaluation and follow the evaluator's recommendations; secure and maintain adequate housing and income; refrain from substance abuse, and have no involvement with the criminal justice system. (Petitioner's Exhibit A).
DCF proved by a preponderance of the evidence at this hearing that Alejandra C. failed to abide by a number of these expectations after they were entered, and that her non-compliance began shortly after May 12, 1998 and has continued through the present time. CT Page 13690
DCF social worker Carrie Cassidy referred the mother to a substance abuse evaluation at the Alcohol Drug Rehabilitation Center which was scheduled for May 18, 1998. Alejandra C. failed to appear for that appointment (Petitioner's Exhibit B, Page 2). The mother was admitted to the methadone maintenance program for treatment of heroin addiction on June 6, 1997. (Testimony of Carrie Cassidy and Petitioner's Exhibit C). A letter from the Hartford Dispensary, which the court finds to be credible, stated that Alejandra C. was placed on probation within the program during July 1998, for continued benzodiazepine use and for failure to comply with requests that she render urine samples. (Petitioner's Exhibit C). She was subsequently discharged from the program in September 1998 for using benzodiazepines while on methadone, and for violating program rules. (Testimony of Carrie Cassidy and Petitioner's Exhibit C). The Hartford Dispensary letter indicated that during the probationary period referred to above, Alejandra C. "had five benzodiazepine urines and failed to provide a urine on one occasion." (Petitioner's Exhibit C). The treatment facility's letter, which was signed on September 21, 1998 by Carolyn Delgado, supervisor of support services, further stated:
 "Methadone treatment seemed appropriate for [mother] as evidenced by a urine profile free of opiates. However, [mother] consistently resisted following program requirements and challenged staff whenever she was reminded of treatment expectations. [Mother's] continued benzodiazepine use which began in February 1998 and her unwillingness to address this use has resulted in her being inappropriate for methadone treatment at this time." (Petitioner's Exhibit C).
Ms. Delgado concluded her letter by recommending that Alejandra C. undergo a psychiatric evaluation to determine what treatment would benefit the respondent mother at this time. (Petitioner's Exhibit C).
At an in-court review on July 9, 1998, Judge Keller ordered the mother to comply with drug screens, and undergo a substance abuse evaluation if she tested positive for illegal drugs. The judge again directed the mother to cooperate with a parent aid program. (Petitioner's Exhibit B, Page 2). Despite that second chance, and the admonitions of both the Dispensary staff and the court, Alejandra C. tested positive for benzodiazepines at the CT Page 13691 Hartford Dispensary on July 17, 1998, July 24, 1998, July 28, 1998, August 6, 1998 and August 18, 1998. (Petitioner's Exhibit D).
The mother twice failed to cooperate with a parent aid program. Documents from the program, which is operated by St. Francis Hospital, indicate that out of a total of 10 parent aid home visits, six were missed by the respondent. (Petitioner's Exhibit F). Her lack of cooperation once again forced the program to close its case without providing the respondent with the court-mandated parent aid assistance (Petitioner's Exhibit B, Page 2 and Petitioner's Exhibit F, Page 3).
Alejandra C. initially cooperated with parenting classes conducted by Catholic Family Services' Family Connections program. However, after Angel and Angelica were returned to her care and custody under the order of protective supervision, her participation ceased. Program records established that between May and July 1998, the respondent mother missed numerous appointments and failed to attend any classes, despite the fact that the program sent transportation to the respondent's residence to bring her to the classes. (Petitioner's Exhibit E). A letter dated August 15, 1998 from Maria Isabel Pere, M.A., of the Family Connections Program noted:
 "Reasonable efforts were made in order to reintegrate [mother] to the Reunification program. [Mother] has not been able to comply with the attendance to program as expected. At this time and due to lack of compliance, services to the family are ended." (Petitioner's Exhibit E).
DCF Social Worker Carrie Cassidy referred Alejandra C. for a drug screen and substance abuse evaluation at ADRC on August 27, 1998. The mother failed to attend. (Petitioner's Exhibit I). In a letter to the mother dated August 28, 1998, the social worker informed the mother that she was being referred to the Institute for Hispanic Families for parenting classes, to Klingberg Family Services for a parent aid program and to Hartford Hospital for psychiatric consultation. (Petitioner's Exhibit I)
As of the date that this contested hearing concluded, there was no evidence that Alejandra C. was involved at present in substance abuse treatment of any kind.[1] Her treatment for opiate addiction at the Hartford Dispensary had ended unsuccessfully more than one month earlier, and a preponderance CT Page 13692 of the evidence at hearing established that the respondent mother was then engaged in polysubstance abuse, because she was illegally taking benzodiazepines in addition to her lawfully-prescribed methadone. There was no evidence that she has been involved in any type of parenting program, or has been receiving the assistance of a parent aid, or other in-home support services, since the date when the motion to modify disposition was filed.
Social Worker Cassidy indicated in both her written report, and in her testimony at trial, that when she visited the respondent mother's home, Angel and Angelica appeared to be healthy and happy. "They are always clean and appropriately dressed. The apartment is neat, orderly, and appropriate for mother and her children." (Petitioner's Exhibit B, Page 3). Although the father, Angel M., has not always resided in the home with the mother and the children, he has apparently been living with them for approximately the past two months. Before that, Angel M. was active in the lives of his children, and interacted with them on an almost daily basis. The father is taking methadone for his heroin addiction. (Petitioner's Exhibit B, Page 3). Although there was no formal testimony or evidence about this at the hearing, a representation was made that Angel M. is employed. The court finds that Angel M. has been compliant with his court-approved expectations. DCF social worker Carrie Cassidy testified that she regarded Angel M. as a stabilizing influence in the home. Although Ms. Cassidy testified that she has "concerns" about the father's anger management, there is no indication that he has abused the children, or directed inappropriate anger towards them.[2]
The oldest child, Angel, is eight. Angel was enrolled in the Burns Elementary School from April 14, 1998 until the beginning of the current academic year (Petitioner's Exhibit G). During that period, he was absent eight times, and was late on seven other days. Angel is now enrolled at the McDonough Elementary School, where he has been absent eight days and tardy seven times this year (through the date the hearing concluded). (Petitioner's Exhibit L).
 ADJUDICATION
The term "protective supervision" means ". . . a status created by court order following adjudication of neglect whereby a child's place of abode is not changed but assistance directed CT Page 13693 at correcting the neglect is provided at the request of the court through the Department of Children and Families or such other social agency as the court may specify." C.G.S. 17a-93(i). Connecticut Practice Book Section 26-1 defines protective supervision as "A disposition following adjudication in neglected, uncared for or dependency cases created by an order of the judge requesting a supervisory agency other than the court to assume the responsibility of furthering the welfare of the family and best interests of the child when the child's place of abode remains with the parent or any suitable or worthy person, subject to the continuing jurisdiction of the court."
In essence, this type of disposition enables the court to retain an adjudicated child in the family home, while simultaneously taking appropriate measures to supervise the child's safety, and remediate the conditions which initially brought the child under the court's jurisdiction. Protective Supervision is imposed in those cases where the court believes that the parents will safely care for the child, and will cooperate with court conditions, supportive services, and the ongoing supervision of child welfare professionals.[3]
In this case, the children were originally adjudicated as neglected because their medical needs were not being met, and due to the mother's substance abuse and unwillingness to cooperate with support services. (Petitioner's Exhibit B, Page 1). Following the neglect adjudication and the order of protective supervision, DCF and other agencies consistently attempted to provide appropriate rehabilitative services to Alejandra C. Despite those attempts, and despite repeated admonishment by the social worker, treatment providers and the court, the mother continued to abuse drugs, resist treatment, and disregard DCF's efforts to protect and supervise Angel and Angelica.
The court is mindful of the fact that the children appeared to be happy, healthy and well-cared for during home visits by the social worker. The court is also mindful that the father, Angel M., has been compliant with his expectations, and is now living with Alejandra C. and the children.
The court finds, however, that the mother's actions and inaction since adjudication pose a real threat to the children's health, safety and well-being. Angel is eight years old, and Angelica has just turned one. Because the father is reportedly working, their primary caretaker during the hours of his CT Page 13694 employment, is Alejandra C. The preponderance of the evidence at this hearing proved that the mother remains addicted to opiates, was illegally mixing non-prescribed sleeping pills with prescribed methadone prior to her unsatisfactory discharge from the Hartford Dispensary program, and has not been receiving any kind of substance abuse treatment for the past several months. Under theses circumstances, leaving two young children, and particularly an infant, in her unsupervised care for protracted periods of time would be both irresponsible, and an invitation for disaster. Alejandra C.'s unwillingness to cooperate with DCF and its service providers has thwarted the legitimate orders and expectations of the court. These orders were imposed to facilitate the children's safety by providing remedial services to the parents, and by ensuring that mandated reporters of abuse and neglect, such as the parent aids, would have regular contact with the children and the parents in their home. Accordingly, the mother's resistance to such services also places the children at risk, because it diminishes DCF's ability to provide theprotective supervision mandated by the court at disposition. Where a court finds parental noncompliance with its orders, it can modify the original disposition. In re Stanley D.,45 Conn. App. 606, 611 (1997).
The father, although compliant with his own expectations, has not been able to facilitate the mother's treatment, or prompt her compliance with DCF. The court finds that the children would remain at risk, despite his presence in the home, because the mother would have unsupervised access to the children while he was at work, and at other times when he was in, and out of, the home.
In summary, the court finds that DCF has proven by a preponderance of the evidence that Alejandra C.'s noncompliance with the terms of protective supervision constitutes a detriment to the welfare of the children which makes commitment to DCF in their best interests. Pursuant to C.P.B. Section 33-8 and C.G.S.46b-129(d), the motion to modify disposition is hereby granted, and it is ordered that the care and custody of Angel M. and Angelica M. be committed to the Commissioner of the Department of Children and Families for a period not to exceed one year. Based on a preponderance of the evidence presented at this hearing, the court finds that DCF made reasonable efforts to prevent removal of the children from their parental home.
The court further orders that the parties shall forthwith CT Page 13695 agree to, and sign, new court-approved expectations forms detailing the steps which each of the parties will hereafter take to achieve reunification. These shall be submitted to the court and, upon approval, entered as further orders in this matter. For Alejandra C., said expectations should include intensive substance abuse treatment, successful completion of a parenting program and random drug screens. Based upon the evidence presented, the court on its own motion orders that the respondent mother submit to a psychiatric evaluation in order to determine the nature and extent of the substance abuse treatment which she requires, and in order to diagnose any physical or psychological illnesses from which she may be suffering. Said psychiatric evaluation shall be paid for by DCF, and performed by an evaluator selected by the court service officer of this court. Expectations for the respondent father shall include requirements that he cooperate with substance abuse treatment and anger management counseling. DCF is ordered to provide casework services and necessary reunification programs for both respondents and the minor children.
SO ORDERED
BY THE COURT:
Dyer, J.